*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *LAURIE CHADWICK,* | ) |
| *Plaintiff* | )<br>)<br>) |
| v. | )   Docket No. 07-70-P-H |
| *WELLPOINT, INC., et al.,* | )<br>) |
| *Defendants* | )<br>) |

### *RECOMMENDED DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

The defendants, WellPoint, Inc. and Anthem Health Plans of Maine, Inc., move for summary judgment on all claims asserted against them in this action alleging gender discrimination in the awarding of a promotion. I recommend that the court grant the motion.[1]

### I.  Summary Judgment Standards

### A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving

---

[1] The plaintiff has requested oral argument on the motion. Docket No. 45. The papers filed by the parties are sufficient to allow me to make a recommendation on this motion.

1

party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See*

*id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(e). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

## II.  Factual Background

The plaintiff works in the defendants' South Portland, Maine office. Defendants' Statement of Material Facts ("Defendants' SMF") (Docket No. 28) ¶ 1; Plaintiff's Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 39-2) ¶1. She apparently was employed by the defendants at all relevant times, although that fact is never clearly stated in the parties' statements of material facts. The plaintiff is the mother of triplets born on June 4, 2000 and a son born on May 20,

1995. *Id*. ¶ 2. She began her career with the defendants as a claims processor and by 1999 had become an Other Party Analyst, which eventually became known as her current title, Recovery Specialist II. *Id*. ¶ 3. The essential duties of this position are to pursue claims for overpayments or reimbursements from other parties who may be liable for claims. *Id*. ¶ 4. The requirements for the position are knowledge of relevant claims systems and related software, good PC skills, strong problem-solving and oral and written communication skills. *Id*.

In June 2006 the plaintiff applied for the Recovery Specialist Lead position within her department, then known as the Northeast or East Cost Containment and Overpayment Avoidance ("CCOA")group. *Id*. ¶ 5. The Northeast or East CCOA was responsible for the recovery function for a region consisting of the defendants' offices in Maine, New Hampshire and Connecticut. *Id*. The essential duties of the Recovery Specialist Lead position were to lead the members of the group in recovering overpayments or situations involving other party liability. *Id*. ¶ 6. The Recovery Specialist Lead was responsible for assigning and prioritizing work, authorizing alternate payment arrangements or negotiating settlements, providing on-going training to lower-level associates, conducting work audits, developing procedures and providing input into relevant policies and writing queries and providing reports to management from systems. *Id*. The requirements for the position were a bachelor's degree and two to three years of related experience or the equivalent combination of education and experience; excellent communication skills; analytical and problem-solving skills; and strong PC skills. *Id*. The position also required organizational skills and the ability to manage multiple priorities in a time-sensitive environment. *Id*. In filling the position at issue, the defendants were also seeking someone with subject-matter expertise in either COB, Subro or WC.[2] *Id*. The person selected for the position was to be located in Maine or New Hampshire. *Id*. ¶ 7.

---

[2] With the exception of "CCOA," *see* text immediately above, the acronyms used by the parties throughout their statements of material (*continued on next page*)

4

Five current employees of the defendants, all female, submitted applications for the position, including the plaintiff. *Id.* ¶ 8. Four, including the plaintiff, were selected for interviews. *Id.* Donna Ouellette was eventually hired for the position. *Id.* ¶ 9. After Ouellette was hired for the position, the position was later eliminated. *Id.* ¶10. Ouellette has two children; as of July 2006 their ages were nine and fourteen. *Id.* ¶ 11. At the time they applied, both Ouellette and the plaintiff held the position of Recovery Specialist II. *Id.* ¶ 12. According to her resume, the plaintiff began working for Anthem Blue Cross/Blue Shield in 1997 as a Claims Processor. *Id.* ¶ 13. According to Ouellette's resume, she had worked for Anthem Blue Cross/Blue Shield since 1999 as a Claims Processor/Recovery Specialist. *Id.* ¶ 14.

When the job was posted, the plaintiff and Ouellette had been reporting to Nanci Miller, a Manager II, for approximately three months. *Id.* ¶¶ 15-16. Miller reported that the plaintiff and Ouellette were the top two candidates. *Id.* ¶ 15. Miller had ultimate authority to make the hiring decision. *Id.* ¶ 17. Miller testified that at the time she was making her decision, she took into account her personal observations of the plaintiff and Ouellette and that she had enough information about their performance to evaluate them as compared to each other. *Id.* ¶ 18. Based on her experience supervising the plaintiff before her interviews, Miller reported that the plaintiff was reliable, "a go-to person" and smart, and that she produced good quality work. *Id.* ¶ 20. In her experience supervising the plaintiff and Ouellette, Miller observed that Ouellette had more experience training and working collaboratively with other departments and people in other offices. *Id.* ¶ 21.[3] She also observed that

---

facts are never explained.

[3] The plaintiff purports to deny this paragraph of the defendants' statement of material facts, first because it "does not comply with Local Rule 56(b)'s requirement that 'each [fact must be] set forth in a separately numbered paragraph' and that "[e]ach fact . . . shall by [sic] simply and directly stated . . . and shall be supported by a record citation[,]" and then because there is other evidence in the record from which the plaintiff draws the inference that "Miller did not base her decision on the relative objective merits of Plaintiff and Ms. Ouellette." Plaintiff's Responsive SMF ¶ 21. The second assertion does not constitute a denial of the factual assertions from this paragraph which I include in the text. Because the paragraph is supported by the cited record material, it is deemed admitted. I construe the first assertion as a request to strike the paragraph, as it clearly is not a denial; that request is denied. Paragraph 21 of the
(*continued on next page*)

Ouellette had more relevant total experience than the plaintiff, including accounting skills from previous employment. *Id.*

Based on her experience supervising Ouellette prior to her interviews, Miller reported that Ouellette had good training skills, was able to communicate "to all levels" and was reliable and dependable. *Id.* ¶ 22. She also noted that Ouellette was able to communicate with more confidence than was the plaintiff. *Id.* Miller testified that both the plaintiff and Ouellette were subject-matter experts in COB. *Id.* ¶ 23. In an e-mail, the plaintiff identified the following as skills that she possessed: cross-training in SUBRO, identifying diagnoses, creating claim listings, creating updates to the claim listings, speaking with med-pay carriers, updating files maintained in Lotus Notes, working with Meridian in identifying old claims that cannot be viewed in MCW. *Id.* ¶ 24. Miller reported that Ouellette had the same abilities and exposure as did the plaintiff in those areas. *Id.* ¶ 25. Miller testified that the plaintiff acted "nervous when she was communicating with employees from different regions" and that she acted nervous when she spoke with Miller regarding certain work issues. *Id.* ¶ 26. Otherwise, Miller thought that her interview with the plaintiff went fine. Plaintiff's Statement of Additional Facts ("Plaintiff's SMF") (included in Plaintiff's Responsive SMF, beginning at 27) ¶ 11; Defendants' Reply to Plaintiff's Additional Statement of Material Facts ("Defendants' Responsive SMF") (Docket No. 43) ¶ 11. Miller gave the plaintiff tips on how to present herself to the other interviewers in hopes she would perform well in those interviews. *Id.* ¶ 13. Miller also noted one instance in which she called the plaintiff to follow up on an e-mail the plaintiff had sent her

---

defendants' statement of material facts is taken almost verbatim from the cited source, the defendants' response to the first interrogatory posed to them by the plaintiff. Defendants' Responses to Plaintiff's First Set of Interrogatories (Exh. D to Affidavit of Margaret Coughlin LePage (Docket No. 34)) No. 1. While it might have been more true to the letter of Local Rule 56(b) if the defendants had repeated this citation after each separate sentence of paragraph 21 of their statement of material facts, to strike the paragraph because it does not do so would exalt form over substance.

and the plaintiff "was nervous talking about the issue over the phone" and "felt more comfortable sending e-mails." Defendants' SMF ¶ 26; Plaintiff's Responsive SMF ¶ 26.

As part of the application process, the plaintiff and Ouellette each had three separate interviews with Miller, Dawn Leno and Linda Brink. *Id*. ¶ 27. The initial interviews were conducted by Miller. *Id*. ¶ 28. Ancillary interviews were then conducted by Brink, who had supervised both the plaintiff and Ouellette prior to Miller's arrival, and Leno, the Director of Recovery. *Id*. ¶ 29. Miller addressed the same set of interview questions to each applicant. *Id*. ¶ 30. During her interview in a conference room at the defendants' South Portland office, the plaintiff told Miller that she was "a little nervous;" Miller later testified that the plaintiff was nervous. *Id*. ¶¶ 33-34. The plaintiff's second interview was with Leno and took place over the telephone. *Id*. ¶ 35. The plaintiff was more nervous during this interview than she was during the interview with Miller. *Id*. ¶ 36. The plaintiff admits that her interview with Leno "didn't go very well." *Id*. ¶ 37.

The plaintiff's interview with Brink also took place over the telephone. *Id*. ¶ 40. Brink had worked closely with the plaintiff as her previous supervisor and thought she was a good candidate for the position and encouraged her to apply. *Id*. ¶ 41.

Miller received feedback from Leno and Brink regarding their interviews with the plaintiff and Ouellette which Miller recorded in notes on the candidates' respective resumes. *Id*. ¶ 38. Her notes from her conversation with Leno regarding her interview with the plaintiff include the following comments: "Had opportunity to 'sell herself' on some successes she's had, but did not. Answers were brief with little substance. Extremely nervous — showed lack of confidence. Lead role should be able [sic] demonstrate confidence — associates need that! Felt other applicants who applied for Team Lead interviewed better overall." *Id*. ¶ 39.

7

Miller's notes from her conversation with Brink regarding the plaintiff's interview include the following comments: "Disappointed w/ how [Plaintiff] carried herself during interview. She was very nervous, which was a surprise b/c I've worked with her and we knew each other. When asked why [Plaintiff] was the right choice for the job, responses were 'good @ keeping track of inventory and motivating.' Did not elaborate further." *Id.* ¶ 42.

Miller's notes from her conversation with Leno regarding Ouellette's interview include the following comments: "Enthusiasm, great outlook. Had to reemphasize role was for ME, not just NH. Gave good answers with examples when asked. Well received choice in the role. Would work well with Ops as a represent [sic] CCOA." *Id.* ¶ 43. Miller's notes from her conversation with Brink about Ouellette's interview include the following comments: "Surprised by how well [Ouellette] interviewed. Answers were right on. Would work well with Sheri. Offered great recommendation [sic] to identified problems. Is respected as an 'OE' by fellow peers. Has always been 'even-keeled.' Reliable, consistent. Among the best of the Recovery team." *Id.* ¶ 44. Miller testified that both Leno and Brink thought Ouellette had interviewed better than the plaintiff. *Id.* ¶ 46.

In describing Ouellette's performance in her interview, Miller said: "I can recall [Ouellette] was very enthusiastic. She provided examples of how she accomplished projects. Was very specific about that and was very positive. Acknowledged some areas for improvement within the region and how she could help with that." *Id.* ¶ 47. She testified that she thought Ouellette's skills were stronger, that she interviewed better and that she "could see her in that role within the region working with everyone else better." *Id.* ¶ 48. Miller testified that even without the feedback from Leno and Brink she would have hired Ouellette for these reasons. *Id.* ¶ 49.[4] In making her decision, Miller relied on

---

[4] The plaintiff purports to deny this paragraph of the defendants' statement of material facts, Plaintiff's Responsive SMF ¶ 49, but her response does not deny that Miller so testified; the paragraph is accordingly deemed admitted to the extent that it is supported by the record citation given.

the information she received from Leno and Brink. *Id*. ¶ 50. She testified that the decision to hire Ouellette rather than the plaintiff was easy "based on the interviews." *Id*. ¶ 51.

After the interviews, Miller completed Candidate Evaluation Forms for the plaintiff and Ouellette. *Id*. ¶ 52. The forms for both contain identical qualities and skills for evaluation, on a rating scale of zero to four. *Id*. ¶ 53. On the completed forms, Ouellette outscored the plaintiff in every position-specific competency, for an overall rating of 135 compared to the plaintiff's 85. *Id*. ¶ 54. In the WellPoint competencies, Ouellette outscored the plaintiff in every category except leadership, in which both received the same score. *Id*. Ouellette received an overall score of 137.5 in this area compared to the plaintiff's 93.75. *Id*. Miller completed the evaluation forms after she had already decided not to hire the plaintiff for the position. Plaintiff's SMF ¶ 47; Defendants' Responsive SMF ¶ 47.

In their 2005 performance evaluations, both the plaintiff and Ouellette were rated "Highly Successful" overall. Defendants' SMF ¶ 55; Plaintiff's Responsive SMF ¶ 55. The plaintiff's overall numerical score was 4.40 while Ouellette's was 3.84. *Id*. As the plaintiff's supervisor, Miller did not identify any weaknesses based on the plaintiff's performance in the period before she made the decision not to hire the plaintiff for the team lead position. Plaintiff's SMF ¶ 3; Defendants' Responsive SMF ¶ 3. Miller testified that the plaintiff's experience handling an inventory for the state of Maine would be helpful to her in performing the function of "centralizing NE inventory" which was critical to the team lead position. *Id*. ¶ 30. When Miller learned that the plaintiff had triplets, she sent her an e-mail in which she wrote: "Oh my – I did not know you had triplets. . . . Bless you!" *Id*. ¶ 6.

Miller met with the plaintiff to inform her that Ouellette had been hired for the position. Defendants' SMF ¶ 58; Plaintiff's Responsive SMF ¶ 58. She knew this would be a difficult conversation as the plaintiff "had her heart set on the job." *Id*. ¶ 59. The plaintiff claims that in this

9

meeting, Miller stated: "It was nothing you did or didn't do. It was just that you're going to school, you have the kids and you just have a lot on your plate right now." *Id*. ¶ 60. The plaintiff also claims that Miller said: "If they were in your position they would feel overwhelmed." *Id*. ¶ 61. At that time, the plaintiff was taking one course a semester at the University of Southern Maine. *Id*. ¶ 60. Miller testified that she did not actually believe that the plaintiff would have had too much on her plate if she had been named to the Lead position. *Id*. ¶ 65. She testified: "I wanted to not hurt her feelings. That was ultimately my goal [sic] was not to hurt her feelings, because I did think highly of her. I did value her as an employee. I relied on her and I truly didn't want to hurt her feelings." *Id*. ¶ 66. When questioned during her deposition about whether Miller would have made the same comment regarding having too much on her place if the plaintiff was a man, Miller replied: "I don't know. I would have probably not wanted to hurt that person's feelings, so it is likely that I would have said that." *Id*. ¶ 67. Miller testified that in retrospect she thought that the comment she made to the plaintiff about her children during the conversation in which she told the plaintiff that she had not been selected to be team lead was inappropriate. Plaintiff's SMF ¶ 43; Defendants' Responsive SMF ¶ 43.

In an e-mail, the plaintiff reported to Patricia Shields of the defendants' human resources department that during her interview with Brink "[s]he stated, Laurie, you are a mother would you let your kids off the hook that easy, if they made a mess in [sic] room, would you clean it or hold them accountable?" Defendants' SMF ¶ 68; Plaintiff's Responsive SMF ¶ 68. During her deposition, Brink testified that she could not recall making that comment concerning the plaintiff's children and that such a statement would be inappropriate in an interview "[b]ecause being a mother has nothing to do with your being able to do your job." *Id*. ¶ 69.

10

Leno was sometimes unaware whether or not a particular applicant for the position had children. *Id*. ¶ 70. Brink was sometimes unaware whether or not certain applicants had children and she testified that she did not question applicants on the subject. *Id*. ¶ 71.

In her deposition, the plaintiff testified that she was unaware of any male employees at Anthem who had triplets or four or more children. *Id*. ¶ 72. Defendants' Interrogatory No. 6 asked the plaintiff: "If you contend that Defendants have treated male employee(s) with or without children more favorably than female employee(s) with or without children, please describe, in detail, the basis for your contention and list the name of every male employee that you contend received more favorable treatment." *Id*. ¶ 73. Defendants' Interrogatory No. 7 asked the plaintiff: "If you contend that Defendants have promoted more male employees with or without children than female employees with or without children, please describe, in detail, the basis for your contention and list the names of every male employee that you believe has been promoted [sic] since you began working for Anthem Health Plans of Maine, Inc." *Id*. ¶ 74. In response to these two interrogatories, the plaintiff named only one male: Artie or Arthur McCormack. *Id*. ¶ 75. She has not supplemented this response. *Id*. ¶ 76. When asked during her deposition if she knew of any similarly situated male that she was treated less favorably than, the plaintiff responded that she did not. *Id*. ¶ 78.

McCormack is the only male who was promoted to or hired for a Lead position in which Miller, Brink or Leno served as hiring manager since 1998. *Id*. ¶ 79. McCormack does not have children. *Id*. ¶ 80. He became a team Lead around 2004. *Id*. ¶ 81. At the time of McCormack's promotion, Brink could and did simply select the employee she thought was most qualified for the position, without undertaking an interview process. *Id*. ¶ 82.

### III.  Procedural Background

On May 23, 2007 the defendants filed a motion to dismiss this action on the grounds that the plaintiff could not prove sex discrimination, the gravamen of her complaint, Complaint, Demand for Jury Trial, etc. (Attachment 3 to Notice of Removal (Docket No. 1)) ¶¶ 16-18, because the person selected for the position which the plaintiff alleged she was denied was also female.  Defendants' Motion to Dismiss Plaintiff's Complaint (Docket No. 8) at 3-6.  The plaintiff responded that her claim was based on "the gender stereotype that 'women are mothers first, and workers second[,]'" and that reliance on this stereotype alone, regardless of who was given the job at issue, is sufficient to state a claim for sex discrimination.  Plaintiff's Objection to Defendants' Motion to Dismiss, etc. (Docket No. 10) at 1-2, 4-5, 6-9.  Judge Hornby denied the motion to dismiss, ruling specifically as follows:

> I conclude that the promotion of another woman does not foreclose the plaintiff's ability to prove her case, and that the law entitles her to proceed with her case.
>
> * * *
>
> The complaint here adequately pleads sex discrimination, and contains sufficient detail given the statements that management allegedly made.
>
> * * *
>
> Should I nevertheless direct the plaintiff to respond to the motion as one for summary judgment?  *See* Fed. R. Civ. P. 12(c).  Although I considered that option seriously, I conclude that it is inappropriate. . . .
>
> The question of sex discrimination here is whether the employer denied this female with 6-year-old triplets and an 11-year-old a promotion when it would have given the promotion to a male with the same number of same-aged children.  *Phillips v. Martin Marietta Corp.*, 400 U.S. 542 (1971); *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 158 (7th Cir. 1996) ("The central question in any employment-discrimination case is whether the employer would have taken the same action had the employee been of a different . . . sex . . . and everything else had remained the same.")  Certainly it is relevant for the factfinder to learn that ultimately a female with somewhat older and fewer children received the promotion.  But that is not dispositive of the discrimination claim (the assertion that the employer treated women with very young children differently from men with very young children), particularly in the face of the statements allegedly made to the plaintiff and her allegations that her qualifications (relevant experience and duties) were superior to those of the woman eventually promoted in her

> stead. Compl. ¶ 10. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1966) (holding in an ADEA case that "[t]he fact that one person in the protected class has lost out to another person in the protected class is . . . irrelevant, so long as he has lost out *because of his age*.") (emphasis original). . . . [I]t still is possible that the employer treated females with several very young children differently from how it treated similarly situated males.

Order on Defendants['] Motion to Dismiss Plaintiff's Complaint ("Order") (Docket No. 15) at 1-4.

### IV. Discussion

The defendants contend that the post-discovery evidence shows that the plaintiff will not be able to establish that the promotion would have been given to a similarly-situated male because no such male is employed by the defendants. In the alternative, the defendants assert that the evidence demonstrates that the plaintiff was not selected for the position for legitimate, non-discriminatory reasons and the plaintiff cannot establish that these reasons are a pretext for sex discrimination. Defendants' Motion for Summary Judgment, etc. ("Motion") (Docket No. 27) at 1-2. The plaintiff's response returns to the argument she used in opposing dismissal: she need only prove that the decision was motivated in part by a sexual stereotype, even if the defendants would have taken the same action in the absence of that motivation. Plaintiff's Objection to Defendants' Motion for Summary Judgment ("Opposition") (Docket No. 39) at 2. I can only read Judge Hornby's order on the motion to dismiss to have rejected this argument, and I will not address it further.

The plaintiff's alternative argument responds to the defendants' presentation. However, she contends that, under the burden-shifting approach established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), she need not point to any similarly situated male who was treated more favorably, but only that the defendants "had a continued need for someone to perform the same work" after she was denied the promotion. Opposition at 15. She cites *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 155 (1st Cir. 1990), in support of her position, *id.*, but the very language

13

she quotes from that opinion distinguishes it from this case.  *Cumpiano* dealt with a discharge, not a promotion.  902 F.2d at 155.  When a promotion rather than a discharge is involved, the fourth element of a *prima facie* case for purposes of the *McDonnell Douglas* analysis[5] is that the position either remained open or was given to a less-qualified individual who was not a member of the protected class.[6]  *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005); *see Sanchez v Puerto Rico Oil Co.*, 37 F.3d 712, 719 (1st Cir. 1994) (*McDonnell Douglas prima facie* case model must be custom-tailored to fit both particular animus and particular type of employment decision involved).   Here, the position did not remain open and the plaintiff argues that Ouellette was less-qualified than she, but she avoids discussion of the nature of the protected class.  This is a point which I believe was resolved by Judge Hornby's ruling on the motion to dismiss.  The legally-protected group in this case is women, not women with 6-year-old triplets and another 11 year-old child.

With the issue properly framed, *see Fuller v. GTE Corp./Contel Cellular, Inc.*, 926 F. Supp. 653, 656-58 (M.D.Tenn. 1996), the plaintiff offers no argument on the fourth element of the test for a *prima facie* case under the rubric of *McDonnell Douglas*.  While this omission alone would allow the court to enter summary judgment for the defendants, out of an abundance of caution I will nonetheless proceed to the two remaining steps of the *McDonnell Douglas* process: whether the defendant has demonstrated a legitimate, non-discriminatory reason for the alleged adverse employment action and,

---

[5] The first three elements are: the plaintiff is a member of a protected class; she applied for and was qualified for a promotion; and she was considered for and denied the promotion.  *Nguyen c. City of Cleveland,* 229 F.3d 559, 562-63 (6th Cir. 2000).  All three of these elements are established by the evidence in the summary judgment record.

[6] The plaintiff apparently attempts to cast female employees with "very young" or more than two children as the protected group, Opposition at 12-14, in order to fit the fact that the person who was given the promotion sought by the plaintiff was a woman with two children, ages 9 and 13, Defendants' SMF ¶ 11; Plaintiff's Responsive SMF ¶ 11.  She cites no authority for this construct, and my research has located none.  A plaintiff may allege "sex plus" discrimination, that is, discrimination based on sex plus another characteristic not protected by law,  but the comparison for purposes of such a claim is between females with the "plus" characteristic and males with the "plus" characteristic, not between females with and without the "plus."  *See, e.g., Miller v. Grand Holdings, Inc.*, 2005 WL 1745639 (D. Minn. July 26, 2005), at *8; *Witt v. County Ins. & Fin. Servs.*, 2004 WL 2644397 (N.D.Ill. Nov. 18, 2004), at *3.

14

if so, whether the plaintiff can demonstrate that the reason was a pretext for discriminatory animus. *Freadman v. Metropolitan Prop. & Cas. Ins. Co.*, 484 F.3d 91, 99 (1st Cir. 2007).

In this case, the plaintiff agrees that the defendants have met their burden to show a legitimate, non-discriminatory reason for the action at issue. Opposition at 16. Accordingly, I will not consider that aspect of the matter further. With respect to pretext, the plaintiff offers only a rehash of her argument that she need not provide evidence of a male comparator in order to prevail. Opposition at 16-19. That avenue is foreclosed in this case by Judge Hornby's ruling on the motion to dismiss. The only specific evidence which the plaintiff cites in a very brief discussion of "evidence from which a jury could reasonably conclude that the Defendants' proffered reasons for denying Ms. Chadwick the promotion are pretexual," *id.* at 19, is evidence that the three decisionmakers "all believed that the decision between the two finalists . . . would be a very difficult one[,]" *id.*, and Miller's alleged statements, which I repeat here:

> Ms. Miller admitted at her deposition that when she told Plaintiff that Plaintiff had not been selected for the Team Lead position, she said that there "might have been too much on [Plaintiff's] plate," including her children. . . .
>
> Ms. Miller admitted at her deposition that she could not recall one way or the other whether she told Plaintiff that "It wasn't anything you did or didn't do" when she was explaining that Plaintiff was not selected for the team lead position.
>
> Ms. Miller testified that she had nothing in her present memory to refute Plaintiff's testimony that Ms. Miller told Plaintiff that if "they were in [Plaintiff's] shoes they would feel overwhelmed."
>
> Ms. Miller testified that during the conversation with Plaintiff in which she informed Plaintiff that Plaintiff had not been selected for the Team Lead position, Ms. Miller "did say that it would be overwhelming, you know, for someone in that same position."

Plaintiff's SMF ¶¶ 15-18, Defendants' Responsive SMF ¶¶ 15-18. The plaintiff's deposition testimony on the statements was the following:

15

> . . . Plaintiff claimed that in this meeting, Ms. Miller stated: "It was nothing you did or didn't do. It was just that you're going to school, you have the kids and you just have a lot on your plate right now." . . .
>
> Plaintiff also claimed that Ms. Miller said "if they were in your position, they would feel overwhelmed."

Defendants' SMF ¶¶ 60-61; Plaintiff's Responsive SMF ¶¶ 60-61.

It is not apparent to me how the fact that the decisionmakers all believed that the choice between the plaintiff and Ouellette for the promotion would be difficult may reasonably be interpreted to provide evidence of sex-based discrimination, even if the plaintiff's test rather than that adopted by Judge Hornby were applied. Miller's unfortunate remarks are a different matter, in that they perhaps could be reasonably interpreted to demonstrate some discrimination between women with more than two children, three of whom were six years old, and women with two children, the younger of whom was 9 years old. However, I fail to see how those remarks could reasonably be interpreted to demonstrate discrimination in favor of a male employee with three six-year-old children and one eleven-year-old over a woman with the same number of children having the same ages. I emphasize that this is *not* to say that a woman may not prove sex-based discrimination by her employer in the absence of an appropriate male comparator simultaneously employed by the same employer. It is simply a conclusion that in this case, the plaintiff has not presented evidence capable of reasonable interpretation that the employer would have favored a male comparator had one been available. *See County of Washington v. Gunther*, 452 U.S. 161, 178-79 (1981) (woman in unique position with employer must be able to succeed on sex-based discrimination claim if employer admits — or woman proves — that her salary would have been higher if she had been male).

## V. Conclusion

For the foregoing reasons, I recommend that the defendants' motion for summary judgment be **GRANTED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 8th day of February, 2008.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge