UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| **LAURIE CHADWICK,** ) | |
| ) | |
| PLAINTIFF ) | |
| ) | |
| v. ) | CIVIL NO. 07-70-P-H |
| ) | |
| **WELLPOINT, INC.** AND ) | |
| **ANTHEM HEALTH PLANS** ) | |
| **OF MAINE, INC.** ) | |
| ) | |
| ) | |
| DEFENDANTS ) | |

## ORDER AFFIRMING RECOMMENDED DECISION
## OF THE MAGISTRATE JUDGE

### INTRODUCTION

This is a case charging sex discrimination. Federal law prohibits sex discrimination in employment. Federal law does not prohibit discrimination based on an employee's parental obligations (sometimes called caregiver discrimination). But if an employer treats such caregivers differently according to sexual stereotypes, then the practice *is* sex discrimination prohibited by federal law.

Here, the plaintiff charges sex discrimination because she was denied a promotion for which she says that she was better qualified than her competitor. But the promotion went to another woman. The plaintiff is the mother of four. But the woman who received the promotion is the mother of two. The plaintiff's children were 6-year-old triplets and an 11-year-old. The other woman's children

were a 10-year-old and a 15-year-old.[1]  In explaining the promotion denial, the decisionmaker stated, "you're going to school, you have the kids, and you just have a lot on your plate right now," and that she and other supervisors would feel "overwhelmed" in the same circumstances.

Federal law affords no protection against discrimination if it is based solely upon young children or the number of young children.  The plaintiff can prevail only if she can show that her employer used *sex*-based stereotyping about a *mother*'s child-raising obligations for very young children—as contrasted with the child-raising obligations of *males* with very young children—to deny her this promotion.  But the plaintiff has no evidence of preferential treatment of similarly situated males, nor of other remarks that show stereotyped assumptions about females' parenting obligations as contrasted with males'.  Although preferential treatment of a similarly situated male is not a prerequisite to proving sex discrimination, and although it is well-known that our culture harbors sex-based stereotypes and there is room on this record for suspicion about stereotyping, I conclude that the plaintiff ultimately does not have sufficient evidence to go to a jury that this employer *actually* engaged in sex-based employment discrimination by promoting a different woman. After oral argument on April 25, 2008, I agree

---

[1] The summary judgment record does not reveal one way or the other whether the decisionmaker knew about these children at the time of the promotion.  The parties, therefore, argue over whose burden of proof it was to show knowledge or lack of knowledge.  I do not believe that the dispute affects the outcome of this motion. But if compelled to resolve it, I would conclude that because the existence and ages of the children are undisputed, and because the burden of proof on the question of discrimination never leaves the plaintiff, it is her burden to show that the employer thought that it was promoting someone without children.  If she failed to do so, the factfinder could assume awareness.

2

with the recommendation (although not all the reasoning[2]) of the magistrate judge, and **GRANT** the defendants' motion for summary judgment.

## FACTS

On the defendants' motion for summary judgment, I take as true the plaintiff's version of disputed facts, and I draw all inferences in the plaintiff's favor.[3] Therefore, I assume that the plaintiff had somewhat better qualifications than the woman who received the promotion (although that assertion is disputed).[4] Three female supervisors were involved in the interviews and the promotion decision.[5] Two of the supervisors made three references to children:

> First, when one supervisor, Miller (the ultimate decisionmaker), first learned weeks earlier that the plaintiff had triplets, she said: "Oh my—I did not know you had triplets. . . Bless you!" Pl.'s Statement of Additional Facts ¶ 6 (Docket Item 39-2); Defs.' Reply to Pl.'s Additional Statement of Facts ¶ 6 (Docket Item 43).
>
> Second, in an interview leading up to the promotion decision, a different supervisor, who actually had encouraged the plaintiff to apply for the promotion, Pl.'s Statement of Additional Facts ¶ 59, asked the plaintiff how she would respond to a subordinate who failed to finish an assigned task on

---

[2] I do not agree that my earlier decision, denying the defendants' motion to dismiss, established law of the case that forecloses the plaintiff's claims of stereotyping on this summary judgment motion. Recommended Dec. on Defs.' Mot. for Summ. J. 13 (Docket Item 46). My statements there were designed only to show that the plaintiff's complaint was sufficient in the face of a 12(b)(6) motion, not to limit the plaintiff's case.

[3] The facts are thoroughly set forth in the Magistrate Judge's recommended decision. See Chadwick v. Wellpoint, Inc., No. 07-70-P-H, 2008 WL 360596 (D. Me. 2008) (slip opinion).

[4] The defendants' version is that the plaintiff lost the promotion because the interviewers found that the other candidate performed far better on the interviews and had better communications skills; and that the decisionmaker gave a false explanation that caused this lawsuit, in a clumsy and ill-advised attempt to make the plaintiff take her rejection less hard. See Defs.' Response to Pl.'s Objection to the Recommended Dec. 4, 5 (Docket Item 54).

[5] The fact that other women made the promotion decision does not impair the plaintiff's claim. People discriminate against or stereotype their own sex, and the Supreme Court has explicitly held that "nothing in Title VII necessarily bars a claim of discrimination "because of . . . sex" merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 79 (1998); see Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 261 n.4 (1st Cir. 1999).

time. The plaintiff said that she would tell the subordinate that the subordinate should have informed her in advance so that the plaintiff could have found someone else to complete the task on time. The interviewer then responded, "Laurie, you are a mother would you let your kids off the hook that easy, if they made a mess in [sic] room, would you clean it or hold them accountable?" Defs.' Statement of Material Facts ("SMF") ¶ 68 (Docket Item 28); Pl.'s Response Statement of Material of Material Facts ("Response SMF") ¶ 68 (Docket Item 39-2).

Third, in explaining the decision not to promote her, the ultimate decisionmaker, Miller, stated: "It was nothing you did or didn't do. It was just that you're going to school, you have the kids and you just have a lot on your plate right now." "If they were in your position, [her supervisors] would feel overwhelmed." Defs.' SMF ¶¶ 60-61; Pl.'s Response SMF ¶¶ 60-61.

The plaintiff has no other evidence of sex-based stereotyping or discriminatory behavior, statements, or attitudes by these supervisors or any other employees or supervisors. The only evidence concerning the supervisors' treatment of males is that they promoted one male. He did not have children. Defs.' SMF ¶¶ 79-80; Pl.'s Response SMF ¶¶ 79-80.

The plaintiff would like to have her expert testify about the extent of sex-based stereotyping in the United States and its workplaces, the meaning of certain words (for example, that "Bless you" in the context in which Miller said it shows sexual stereotyping; likewise for the other supervisor's comment about child discipline strategy), and that it is very unlikely that a man would have been told that he had too much on his plate because of school and children.[6] For the

---

[6] According to the plaintiff's objection to the recommended decision:
> Dr. Still . . . concluded that the e-mail in which the decisionmaker told Laurie that she learned Laurie had triplets and made the comment "Bless you" is an indication that Ms. Miller had a sex-based stereotype that Laurie was a primary caregiver and was

*(continued next page)*

4

reasons I describe below, I conclude that the expert's testimony would not be helpful to a factfinder on the issues that are relevant to this decision, see Fed. R. Evid. 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993) ("Rule 702 . . . requires that the [expert] evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'"); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 156 (1999) ("The trial court had to decide whether this particular expert had sufficient specialized knowledge to assist the jurors 'in deciding the particular issues in the case.'").

## ANALYSIS

In Title VII of the Civil Rights Act of 1964, Congress prohibited employment discrimination based upon sex. 42 U.S.C. § 2000e-2(a). It did not prohibit

---

burdened or potentially overwhelmed by having triplets. Ms. Miller was "essentially saying you poor thing, you have a lot of work, that must be really difficult for you. . . . [T]he implication is that you're burdened or potentially overwhelmed by having triplets . . . based on stereotypes we have that she is the primary caregiver."

Dr. Still also testified that the question asked of Laurie during the interview about her discipline strategy as a mother was "very concrete evidence that her status as a mother was an important cognitive factor when this particular supervisor was interacting with her" and indicates that the interviewer clearly links Laurie's status as a mother with her managerial potential.

Dr. Still testified that the statement by Ms. Miller to Laurie that she did not get the promotion because she had children and had a lot on her plate was indicative of a sex stereotype because it indicated that the stereotype of women as mothers first had been activated. The assumption underlying the statement is that "there's no nanny, there's no husband who can pick up the slack or would pick up the slack." Likewise, the statement by Ms. Miller that she and the other two interviewers would feel overwhelmed in Laurie's position is further evidence that Ms. Miller assumed that Laurie conformed to the stereotype of women as the primary caregivers for their children.

Pl.'s Objection to the Recommended Dec. 4-5 (internal citations omitted) (Docket Item 51). In their reply to the plaintiff's response to the motion for summary judgment, the defendants say that the expert's testimony should be stricken for a number of reasons. I do not address Dr. Still's qualifications; I merely determine, on individual issues on the motion for summary judgment, whether she has testimony that would be admissible and useful to the jury.

discrimination based upon caregiving responsibilities.[7]  In 1971, the Supreme Court confronted the issue of how to treat parenting obligations in the context of Title VII's prohibition of sex discrimination.  In a *per curiam* opinion, the Court held that it is sex discrimination to refuse to hire women with pre-school-age children, while hiring men with pre-school-age children.  The Supreme Court ruled that the court of appeals "erred in reading this section as permitting one hiring policy for women and another for men—each having pre-school-age children."  Phillips v. Martin Marietta Corp., 400 U.S. 542, 544 (1971).  Some courts and commentators call this "sex plus."  As explained by one commentator:

> [W]hen one proceeds to cancel out the common characteristics of the two classes being compared [here, young children], as one would do in solving an algebraic equation, the cancelled-out element proves to be that of [young children], and sex remains the only operative factor in the equation.

Larson, Employment Discrimination, § 40.04, at 40-12 (2d ed. 1996) (quoted in Coleman v. B-G Maint. Mgt. of Colorado, Inc., 108 F.3d 1199, 1203 (10th Cir. 1997)); see Higgins, 194 F.3d at 259.  But the prohibited discrimination remains sex-based, not child-based.  "The central question in any employment-discrimination case is whether the employer would have taken the same action had the employee been of a different . . . sex . . . and everything else had remained the same."  Carson v. Bethlehem Steel Corp., 82 F.3d 157, 158 (7th Cir. 1996).  The Supreme Court has also held that a plaintiff can prove employment

---

[7] The Equal Employment Opportunity Commission has tried to address the resulting complexity in Enforcement Guidance: Unlawful Disparate Treatment of Workers with Caregiving Responsibilities, May 23 2007, available at http://www.eeoc.gov/policy/docs/caregiving.html [hereinafter EEOC Enforcement Guidance].  The statute does prohibit discrimination based on "pregnancy, childbirth, or related medical conditions."  42 U.S.C. § 2000e(k).

6

discrimination through evidence of sexual stereotyping, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), and lower courts have concluded that sexual stereotyping does not require evidence of actual differential treatment of the opposite sex. See Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 113 (2d Cir. 2004); Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46 (1st Cir. 2000) (no evidence how the defendants treated similarly situated male employees, but evidence of discriminatory comments by key decisionmaker was enough that a reasonable jury could find discriminatory animus). See also EEOC Enforcement Guidance at 11; Larson, Employment Discrimination, § 8.03[6] (2d ed. 2006).

The parties devote much of their legal arguments to how to apply McDonnell Douglas,[8] pretext, Costa,[9] and mixed motive analysis to the facts here. But whatever the plaintiff's theory of the case, in the final analysis she must have enough evidence, direct or circumstantial, to go to a jury, from which that jury could conclude that her supervisors considered her caregiving role *as a female* in their decision not to promote her (whether or not her sex ultimately made the difference). See Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 22 n.5 (1st Cir. 1999) ("A Title VII plaintiff must present sufficient evidence not only that the employer's proffered reason is false but also that the real reason is discrimination."). I conclude that she does not have such evidence.[10]

---

[8] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).
[9] Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).
[10] I assume that she has made a prima facie case for McDonnell Douglas purposes. The plaintiff agrees that the defendants have advanced a legitimate, nondiscriminatory reason for their decision, namely, that her competitor performed far better in the interviews and had better communication
*(continued next page)*

7

I examine the statements upon which the plaintiff relies for her claim of sex-based stereotyping.

First, the exclamation "Bless you," uttered upon learning that someone has triplets, cannot alone be turned into a stereotyped remark differentiating mothers of young children from fathers of young children. Miller herself testified that she meant that it was a blessing to have the honor of raising triplets. See Dep. of Nanci Miller 20-21 (Docket Item 30). A jury could disbelieve that interpretation, but that would simply leave the utterance undefined, as an exclamation with ordinary meaning. (A jury would be familiar with usages ranging from the response to a sneeze to a religious invocation.) It would be improper to allow the plaintiff's expert, who is not familiar with Miller, her background, or her semantic usage, and who has not even read Miller's deposition, to testify what Miller meant. In the end, for purposes of legal analysis, the utterance is a friendly exclamation.

Second, a different interviewer's comment/question, analogizing child discipline to appropriate treatment for a subordinate who fails to perform in the workplace, is not sufficient to reveal sexual stereotyping or discrimination against women in the plaintiff's workplace. It may not have been good business judgment for the interviewer to relate home circumstances to the workplace,[11] but it is not

---

skills. Pl.'s Objection to Defs.' Mot. for Summ. J. 16 (Docket Item 39). I do not apply a higher burden of proof for evidence of mixed motive under Costa despite the suggestion of cases like Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 174 (2d Cir. 2006). Moreover, I do not treat as merely a "stray remark" Miller's statement in explaining the decision not to promote. Although Miller has testified that her statement about school, kids, and empathy was an ill-advised attempt to give the plaintiff a way to feel less devastated about her rejection, a jury could disbelieve that explanation and find it pretextual.

[11] The supervisor does not recall this discussion, but I assume that it occurred. The supervisor also states that the comment, if made, was inappropriate. Defs.' SMF ¶ 69; Pl.'s Response SMF ¶ 69.

sex-based: the principle and the question apply equally to discipline by a father. I do not entertain the expert's opinion of what the supervisor's use of the analogy signified. The expert has no familiarity with the supervisor or her background.

It is Miller's comment about continuing education, kids, and empathy for feeling overwhelmed that deserves attention. It is the statement that was offered as an explanation for the adverse employment action. I do not treat the remark as an actual evaluation of the plaintiff's work performance because the record reveals it to be untrue. Instead, the record shows positive evaluations about the plaintiff's past performance, and Miller told her that the denied promotion had nothing to do with anything that the plaintiff did or didn't do. Therefore, the statement can only be viewed as an assumption or generalization about the demands of continuing education coupled with childrearing responsibilities. Although it does not refer explicitly to women, cultural stereotypes certainly exist in our society about a mother's role.[12] The plaintiff wants me to permit the jury to read those sex-based stereotypes into Miller's actual words.

Before I decide whether there is a basis to do so, I step back from the individual parsing of the three remarks to consider whether collectively they represent more than the sum of their parts. The answer is, not much. The comment/question of a different supervisor analogizing child discipline to supervision of subordinates does not alter the significance of what Miller said or did. Miller's exclamation "Bless you," when she first learned that the plaintiff had

---

[12] The Supreme Court recited evidence before Congress about stereotyping in upholding Congress's authority to abrogate the States' sovereign immunity against money damages in claims under the
*(continued next page)*

triplets, does little to inform our understanding of her later comment about continuing education, kids, and empathy, except that it could reinforce the conclusion that Miller believed that the responsibilities associated with raising triplets are unusual or "impressive," as she put it in her deposition, and perhaps "overwhelming" to the plaintiff. But the words alone still do not show that the comments reflect *sex*-based assumptions or stereotypes—that Miller believed that a working *mother* with triplets, a fourth child, and school would be more overwhelmed than a working father with triplets, a fourth child, and school.

In Back, the Second Circuit held that "stereotyping about the qualities of mothers is a form of gender discrimination, and . . . this can be determined in the absence of evidence about how the employer in question treated fathers." 365 F.3d at 113. It went on to say that "'stereotyped remarks can certainly be evidence that gender played a part' in an adverse employment decision," id. at 119 (quoting Price Waterhouse, 490 U.S. at 251), and that a plaintiff "is not required to provide evidence that similarly situated men were treated differently." Id. at 124. I accept those as valid statements of the legal principles—stereotyped remarks can be evidence of sex discrimination, and actual differential treatment of a similarly situated male is not essential to a successful claim. In Back, however, the stereotyped comments that created the evidence of discrimination were frequent and blatant in their focus on Back's role as a female parent: for example, that it was "not possible for [her] to be a good mother and have this job"; "reiterat[ing] that her job was 'not for a mother'"; "that 'because [she] was a young mother, [she]

---

Family and Medical Leave Act.  Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721, 730-32 (2003).

10

would not continue [her] commitment to the work place." Id. at 115. In a somewhat comparable First Circuit case, Santiago-Ramos, the stereotyped comments that were used as evidence of discrimination included "concern about women with children working at [the company] in general," 217 F.3d at 55, questions about "how her husband was managing, considering she was not home to cook for him," id. at 50, statements that a supervisor preferred "unmarried, childless women," id. at 51, discussions about what happens when they "hire females in the child-bearing years," id., and evidence that "a number of other persons at [the company] and the parent company made comments to [the plaintiff] and others concerning the company's treatment of female employees with children." Id. at 56.

That surrounding context gives confidence in Back and Santiago-Ramos that the speakers held (and acted upon) stereotyped views that drew a male/female distinction concerning parenting responsibilities. The plaintiff here has no such context. She would have a jury conclude—solely from "Bless you" and the statement about continuing education, kids, and empathy—that Miller's decision to promote the other woman was based upon a stereotype about female caregivers, not about caregivers generally. But ultimately she has only assumption or conjecture that Miller was stereotyping her because of her sex or would have treated a hypothetical, similarly situated male with young children better. Nothing in Miller's words shows that.[13] Nothing in the record suggests a

---

[13] Miller also testified that she would say the same thing to a male in similar circumstances. I do not credit that statement on the defendants' summary judgment motion, because a jury might not *(continued next page)*

general atmosphere of *sex-based* stereotyping or bias in the plaintiff's workplace. The proposed expert testimony about the prevalence of sex-based stereotypes in America is no substitute for actual evidence (direct or circumstantial) about *these* decisionmakers and *their* beliefs and behaviors.[14]  The expert, whatever her professional credentials, is not competent to testify about what *these* supervisors meant, consciously or unconsciously, in using certain words.

Undoubtedly, Miller's reference—"you're going to school, you have the kids, and you just have a lot on your plate right now"—as a reason for denying the promotion reflects discrimination against a caregiver.  But was the discrimination based upon sex?  We know that there are stereotypes in our culture about male/female roles, and it is tempting to conclude that they inform and affect everyone's behavior, including Miller's decision here with its reference to children, and so it is tempting to say, "Of course it was because the plaintiff was the mother!"  But on this summary judgment record the plaintiff has been unable to show any basis to support the inference that female role stereotyping actually lay behind Miller's decision to promote the other woman, beyond the *assumption* that Miller's reference to "kids" invoked a female's role.  If the case went to a jury on this record, the jury would have to speculate in order to reach a conclusion that Miller stereotyped working mothers and that she treated working mothers of

---

believe it.

[14] Consider the fact that "statistical imbalances" are generally insufficient to prove a prima facie case of disparate treatment; usually, proof of discriminatory intent requires "direct, qualitative demonstrations via written records and personal testimony." Larson, Employment Discrimination, § 9.02[1] at 9-5 (2d ed. 2006).  Where statistics are used to prove an employer's intent, they generally relate to the particular employer.  See id. § 9.02[4].  In contrast, the plaintiff's expert testimony about stereotyping relates to the United States population at large.

young children worse than (given the opportunity) she would treat working fathers of young children.  (Ironically, that would be stereotyping Miller.)  Might Miller harbor such stereotypes? Yes; the jury might well suspect it.  But suspicion is not enough; despite what might be the popular intuition about what Miller meant, I conclude that her use of sexual stereotypes cannot be shown by a preponderance of the evidence on this record.[15]

Accordingly, the Clerk shall enter judgment in favor of the defendants.

**SO ORDERED.**

**DATED THIS 2ND DAY OF MAY, 2008**

/s/D. Brock Hornby
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[15] To allow liability based solely upon the prevalence (but not universality) of stereotypes, together with a sexually ambiguous utterance, would capture some actions that are *not* based on stereotyping. (The plaintiff says that her social science expert would testify "that well-accepted research shows that at least half the people in the United States continue to believe that women with young children 'should stay home and care for their children rather than work.'" Pl.'s Objection to the Recommended Dec. 3.)  Of course the opposite rule carries the risk of under-enforcement.  But our system of civil justice puts the burden of proof on the plaintiff.  Therefore, I conclude that something more specific is required.