UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| LAURIE CHADWICK, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil No. 07-CV-70-P-H |
| WELLPOINT, INC., ET AL. | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION IN LIMINE REGARDING**
**THE PROPER CALCULATION OF BACK PAY DAMAGES AT TRIAL**

Plaintiff, who was the mother of triplet six-year olds and an eleven year-old at the time of the relevant events, alleges that when Defendants denied her promotion to a Lead position they unlawfully considered the sex-based stereotype that women, unlike men, put their responsibilities for rearing young children ahead of their job responsibilities. The final decisionmaker, Nanci Miller, explained that her decision was not based on anything Plaintiff "did or didn't do" but rather that the Plaintiff was denied the promotion because she "had too much on her plate," including her "kids," and the decisionmakers thought Plaintiff would be "overwhelmed" by the new responsibilities of the promotion. Other evidence of sex discrimination includes that the Plaintiff's family care-giving responsibilities had not interfered with her job performance and that she had qualifications superior to those of the chosen applicant, as well as additional comments by the promotion decisionmakers consistent with sex-based stereotyping.

On appeal of summary judgment for Defendants, the First Circuit ruled as follows[1]:

> Given what we know about societal stereotypes regarding working women with children, we conclude that a jury could reasonably determine that a sex-based stereotype was behind Miller's explanation to Chadwick that, "It was nothing you did or didn't do. It was just that you're going to school, you have the kids and you just have a lot on your plate right now." Particularly telling is Miller's comment that, "It was nothing you did or didn't do." After all, the essence of employment discrimination is penalizing a worker not for something she did but for something she simply is. A reasonable jury could infer from Miller's explanation that Chadwick wasn't denied the promotion because of her work performance or her interview performance but because Miller and others assumed that as a *woman* with four young children, Chadwick would not give her all to her job.
>
> . . .
>
> Given the common stereotype about the job performance of women with children and given the surrounding circumstantial evidence presented by Chadwick, we believe that a reasonable jury could find that WellPoint would not have denied a promotion to a similarly qualified man because he had "too much on his plate" and would be "overwhelmed" by the new job, given "the kids" and his schooling. *See Hibbs*, 538 U.S. at 736 ("Stereotypes about women's domestic roles are reinforced by parallel stereotypes presuming a lack of domestic responsibilities for men.").

If she prevails on her Title VII sex discrimination claim, Plaintiff has a "presumptive entitlement" to back pay. *Lussier v. Runyon,* 50 F.3d 1103, 1109 n.7 (1st Cir. 1995) (holding that "back pay is a presumptive entitlement of a plaintiff who successfully prosecutes an employment discrimination case"). *See generally City of Los Angeles v. Manhart,* 435 U.S. 702, 719 (1978) (holding that the presumption in favor of back pay in an employment discrimination case "can seldom be overcome").

Moreover, the law is well settled that "uncertainties in determining what an employee would have earned but for the discrimination, should be resolved against the discriminating employer." *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 263 (5th Cir. 1974); *see also Furr v. AT & T Technologies, Inc.,* 824 F.2d 1537, 1548 (10th Cir. 1994) ("The most elementary

[1] Chadwick v. WellPoint, Inc., 561 F.3d 38, 47-48 (1st Cir. 2009).

conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.") (citations and internal quotations omitted); *Rasimas v. Michigan Dep't of Mental Health,* 714 F.2d 614, 628 (6th Cir. 1983) ("Any ambiguity in what the claimant would have received but for discrimination should be resolved against the discriminating employer."); *Hairston v. McLean Trucking Co*., 520 F.2d 226, 233 (4th Cir. 1975) (same).

Plaintiff here is entitled to request about $10,000 in back pay for the first year after the denial of her promotion to a Lead position when she lost out on a raise that came with the promotion. In its Final Pretrial Memorandum (page 6), however, Defendants argued that Plaintiff has "no claim" for back pay whatsoever because a year after Plaintiff was denied the promotion, the Lead position was eliminated and Ouellette was laid off. This contention is wrong for at least two fundamental reasons.

First, Defendants are asking the Court to assume that Plaintiff would have been laid off a year later if she had received the promotion. But, as noted above, resolving the uncertainties about back pay by assuming the worst case scenario for the employee who was discriminated against is the opposite of what the law requires. Moreover, near the time Ouellette was laid off due to a reorganization she was allowed to interview for the same job as Plaintiff, but Plaintiff was chosen instead. These facts are more than sufficient to defeat Defendants' argument that Plaintiff would certainly have been laid off a year later if she had received the promotion to a Lead position instead of Ouellette.

Second, the Defendants are wrong as a matter of law in assuming that back pay damages must be calculated based on the entire period from the act of discrimination until the time of trial. Once again, Defendants rely on resolving uncertainties in the calculation of back pay in the

manner most favorable to the employer found guilty of discrimination, instead of the legally correct approach of resolving such uncertainties in favor of the employee who was discriminated against. Moreover, federal courts of appeals have repeatedly rejected the argument of employers that back pay must be calculated in the aggregate for the entire time period after the discrimination occurred. As one Court has ruled, back pay may be calculated on a "year-by-year basis" and that if "a plaintiff's interim earnings in any year exceed the wages he or she lost due to the discrimination, that 'excess' must not be deducted from any back pay for other years to which the plaintiff is entitled." *Leftwich v. Harris-Stowe State College*, 702 F.2d 686, 693 (8th Cir. 1983); *see also Gaffney v. Riverboat Servs*., 451 F.3d 424, 463 (7th Cir. 2006) (concluding that it is wrong for "plaintiffs' excess income--earned after the period of time covered by the back pay award—[to be] subtracted from losses suffered during the applicable period of either unemployment or underemployment"), *cert. denied*, 549 U.S. 1111 ( 2007). A plaintiff unlawfully discriminated against in the workplace is entitled to "back pay for those periods in which his earnings were less than the amount he would have earned" even if "the aggregate amount of his earnings from the time of the act of discrimination to the time of this suit exceeded the total amount he would have earned" if the discrimination had not occurred. *Darnell v. Jasper*, 730 F.2d 653, 656-57 (11th Cir. 1984) (reversing trial court for calculating back pay in employment discrimination case based on aggregate earnings over entire period since act of discrimination). In short, when an employee is discriminated against, "his 'excess' earnings are not to be subtracted from the back-pay award for the period" when he earned less because of the discrimination. *Skalka v. Fernald Envtl. Restoration Mgmt. Corp*., 178 F.3d 414, 426 (6th Cir. 1999) (citing, inter alia, *Matthews v. A-1, Inc*., 748 F.2d 975, 978-79 (5th Cir. 1984)).

In summary, Plaintiff should be allowed to seek back pay for the approximately one year period after she was denied the promotion to Lead position until that position was eliminated. [2]

Respectfully submitted,

Date: August 3, 2009

/s/ David G. Webbert

David G. Webbert
Matthew S. Keegan
Johnson & Webbert, L.L.P.
160 Capitol Street, Ste. 3, P.O. Box 79
Augusta, Maine 04332-0079
dwebbert@johnsonwebbert.com
mkeegan@johnsonwebbert.com
Tel: (207) 623-5110

Attorneys for Plaintiff

[2] In addition to back pay, Plaintiff is also seeking economic damages for the adverse effects on her long-term earning potential because the denied promotion would have boosted her resume and put her in a better position to earn future promotions. *See Williams v. Pharmacia, Inc.*, 137 F.3d 944, 953-54 (7th Cir. 1998) (front pay alone is not sufficient to compensate for all future economic damages because "[w]hereas front pay compensates the plaintiff for the lost earnings from her old job for as long as she may have been expected to hold it, a lost future earnings award compensates the plaintiff for the diminution in expected earnings in all of her future jobs for as long as the . . . injury may be expected to affect her prospects"). She is also seeking intangible damages for the injury to her reputation from being denied the promotion. *See generally Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (recognizing that an employee terminated in violation of civil rights is fully entitled to intangible compensatory damages for "such injuries as *impairment of reputation*, personal humiliation, and mental anguish and suffering") (internal quotations and punctuation omitted, citation omitted, emphasis added)

**CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2009, I electronically filed PLAINTIFF'S MOTION IN LIMINE REGARDING THE PROPER CALCULATION OF BACK PAY DAMAGES AT TRIAL with the Clerk of Court using the CM/ECF system, which will send notification of such filing to Margaret Coughlin LePage, mlepage@PierceAtwood.com, and Katharine I. Rand, krand@pierceatwood.com, Attorneys for Defendants, Pierce Atwood, One Monument Square, Portland, ME 04101.

Date: August 3, 2009 /s/ David G. Webbert