UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LAURIE CHADWICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 07-CV-70-DBH |
| ) | |
| WELLPOINT, INC., ET AL. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**JOINT MOTION AS TO STIPULATED FACTS
AND FOR ENTRY OF FINAL JUDGMENT FOR DEFENDANTS**

The parties to the above-captioned case stipulate to the following facts and to the entry of judgment in favor of Defendants, WellPoint, Inc. and Anthem Health Plans of Maine, Inc.

**I.     Joint Stipulation of Facts**

1.     Plaintiff Laurie Chadwick is a current WellPoint, Inc. employee who has worked for WellPoint, Inc. and/or Anthem Health Plans of Maine, Inc. (WellPoint/Anthem) since 1997.

2.     WellPoint/Anthem is a fortune 50 health insurance company with a well deserved reputation as a model employer for women and working mothers and for offering the flexibility needed for a work-life balance that benefits employers and employees alike.  WellPoint's workforce is predominantly female, and women are well-represented at all levels of management, including the Chief Executive Officer of

{W1543439.2}

WellPoint and the former President of Anthem Health Plans of Maine,[1] who are both working mothers.

3. Chadwick is mother to four school aged children, including nine year old triplets. Chadwick gave birth to her triplets while working at WellPoint/Anthem and returned to work after an eight month maternity leave. Since 2008, Chadwick has been allowed to work from home.

4. Chadwick's caregiving responsibilities have never interfered with her work performance. Indeed, Chadwick has an exemplary record as an employee for both her work ethic and her performance and she has earned several promotions and merit pay increases over the years. In 2007, Plaintiff became a Lead Claims Representative and she currently remains in that position.

5. In 2006, Chadwick was one of five female employees who applied for a Recovery Specialist Lead position at WellPoint.

6. Three of the applicants were interviewed by a team of three female managers: Nanci Miller, Linda Brink and Dawn Leno. At the time of the decision, both Linda Brink and Dawn Leno were mothers who had worked while raising their children. Miller has since had a child and continues to work outside the home.

7. Chadwick was a finalist for the team lead position, but she was not selected. The interview team unanimously selected Chadwick's peer, Donna Ouellette, based on their conclusion that while Chadwick and Ouellette had comparable levels of experience and past performance, Ouellette performed better in the interview process, convincing the interview team that she had a better skill set for the position. .

---

[1] Erin Hoeflinger was the President of Anthem Health Plans of Maine during the period in which the facts of this case transpired. Ms. Hoeflinger has since been promoted to President & General Manager of the WellPoint organization in Ohio.

{W1543439.2}                                2

8.  The primary decisionmaker was Miller, who at the time of the decision managed both Chadwick and Ouellette. Miller regarded Chadwick as "reliable," "a go-to person," and "smart." Miller regarded Ouellette as "reliable," with "good training skills," an "ability to communicate to all levels" and a higher level of confidence than Chadwick.

9.  Miller was aware that both Chadwick and Ouellette were mothers of school-aged children. Brink was also aware that both were mothers. Leno could not recall when she knew that Chadwick and Ouellette had children. The topic of the candidates' children or their childcare responsibilities, however, never came up in any deliberations among the managers.

10. Miller knew that Chadwick had her heart set on the team lead position and anticipated that she would be very disappointed in not being selected. Miller met with Chadwick in person to tell her that she was not selected for the promotion.

11. Miller told Chadwick that the interview team had selected another candidate, but did not give a reason for the decision. Miller deliberately avoided telling Chadwick the reason she was not selected because she was concerned that it would hurt Chadwick's feelings to be told that her managers believed one of her peers was a stronger candidate.

12. Instead, Miller told Chadwick that she was a valued member of the team and tried to convince her that she would look back on this decision and be glad she did not get the job.

13. Miller told Chadwick that the company was considering creating operational expert positions in the near future that would be a better fit for her skill set and that if she had been promoted to team lead, she would not have been available to apply for the operational expert positions.

14. In an ill-advised attempt to soften the blow, Miller also told Chadwick that one of the reasons she would look back and be glad she did not get this position was because she had a lot on her plate already with the combination of finishing her education, caring for her children, and her job. Chadwick also honestly recalls Miller stating that her decision to give the promotion to someone else was not based on anything Laurie "did or didn't do" and stating that "if we were in your position, we would feel overwhelmed." Miller honestly believes she did not make those additional statements.

15. Chadwick interpreted Miller's comments as suggesting that her caregiving responsibilities to her children were a factor in her manager's decision to select another employee for the position. Chadwick was surprised she did not receive the promotion because she knew that she had earned a numerical rating of 4.4 out of 5.0 on her last annual performance evaluation and had been encouraged by manager Brink to apply for the promotion.

16. Chadwick's interpretation of Miller's comments was reasonable given the context of the discussion. However, Chadwick's children and her status as a mother in fact played no role whatsoever in the selection process. Moreover, Miller did not view Chadwick as having too much on her plate with her outside responsibilities or that she was unable to handle more responsibility because of them.

17. The decision to select Ouellette over Chadwick was not based upon her gender or her role as a mother, but on legitimate, non-discriminatory job related factors.

## II. Stipulation of Judgment in Defendants' Favor

The parties agree that Defendants' decision to award the promotion to Ouellette was not based upon gender or any sex based stereotype. Given the foregoing stipulated facts, the parties respectfully request that the Court enter final judgment in this case in favor of Defendants.

DATED:  September 30, 2009        /s/ David G. Webbert_____
David G. Webbert
Matthew S. Keegan
JOHNSON & WEBBERT
160 Capitol Street, Suite 3, P.O. Box 79
Augusta, Maine 04332-0079
(207) 623-5110
dwebbert@johnsonwebbert.com
*Counsel for Plaintiff*

/s/ Margaret Coughlin LePage_____
Margaret Coughlin LePage
Katharine I. Rand
PIERCE ATWOOD, LLP
One Monument Square
Portland, ME 04101
(207) 791-1100
mlepage@pierceatwood.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2009, I electronically filed **JOINT MOTION AS TO STIPULATED FACTS AND FOR ENTRY OF FINAL JUDGMENT FOR DEFENDANTS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to Margaret Coughlin LePage, mlepage@PierceAtwood.com, and Katharine I. Rand, krand@pierceatwood.com, Attorneys for Defendants, Pierce Atwood, One Monument Square, Portland, ME 04101.

Date: September 30, 2009, 2009                                 /s/ David G. Webbert_____